UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| OVER & UNDER PIPING CONTRACTORS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:15-cv-169 |
| VERMONT GAS SYSTEMS, INC., | ) ) ) | |
| Defendant. | ) | |

## **OPINION AND ORDER**

This case centers on a payment dispute between Over & Under Piping Contractors, Inc. ("Over & Under") and Vermont Gas Systems, Inc. ("VGS") with respect to work performed on a large natural gas pipeline project. Before the Court is VGS's motion to enforce the parties' oral settlement agreement. VGS submits that counsel for the parties agreed to settle the case, with Over & Under to receive a payment in exchange for mutual general releases and the dismissal of all claims. Over & Under contends that there was no final agreement because material terms of the general releases, including whether those releases would cover VGS's "agents" and "employees," remained open for negotiation.

As set forth below, the Court finds that the parties contemplated general release language that is standard in the State of Vermont, that such standard language includes the terms "employees" and "agents," and that Over & Under's efforts to carve out such terms after agreeing to settle the case violated the oral settlement agreement. The motion to enforce is **granted**.

## **Background**

In late August of 2018, with this case approaching trial, the parties discussed settlement. Upon a request from VGS's counsel for a final settlement offer, Over & Under proposed to settle the case for a payment from VGS of $4 million. On September 1, 2018, counsel for VGS responded that their client had agreed to such payment in exchange for the dismissal of all claims and mutual general releases.

During the September 1 conversation with opposing counsel, Attorney Jeffrey Behm, representing VGS, specified that the general releases would include broad language that is customary in State of Vermont. Attorney Shannon Bertrand, representing Over & Under, understood that the terms of the settlement would include such broad language, and that the general releases would be mutual. On September 2, 2018, Attorney Bertrand telephoned counsel for VGS and reported that he and his co-counsel, Roger Bradley, had spoken with Over & Under owner Joseph Panna, and that Mr. Panna had agreed to the terms of the settlement. Counsel for the parties also discussed a separate general release for Mr. Panna. While counsel on both sides concurred that any general release of claims against Over & Under would include Mr. Panna, VGS agreed to provide him with a separate general release. The parties further agreed that VGS would release all potential warranty claims against Over & Under.

On September 4, 2018, counsel for VGS forwarded proposed settlement documents to counsel for Over & Under. The proposed general release stated that Over & Under

> unconditionally remises, releases, discharges and covenants not to sue VGS and each of its past and present officers, directors, principals, legal owners, beneficial owners, shareholders, employees, predecessors, subsidiaries, parent companies, legal representatives, insurers, agents, contractors and all persons acting by, through, under or in concert with any of them (collectively referred to as the "Released Parties"), of and from any and all action . . . relating to O&U's performance of work on VGS's Addison Natural Gas Pipeline . . . .

ECF No. 172-3 at 10. On September 6, 2018, having received no word from counsel for Over & Under, Attorney Behm sent an email asking when VGS could expect to hear about the settlement documents. Attorney Bertrand responded that Over & Under would be in touch "as soon as we are able."

On September 11, 2018, Attorney Behm emailed opposing counsel and suggested the parties notify the Court that the case had been settled. Attorney Bradley responded via email that Over & Under could not authorize such a communication with the Court because the parties were still working out differences in the settlement agreement and releases. Attorney Behm replied that he was not aware what those differences might be, as he not received any response to the settlement documents sent on September 4.

On September 14, 2018, Attorney Bertrand sent VGS'S attorneys marked-up versions of the settlement documents. The

3

mark-ups removed several terms from the general release, including "subsidiaries," "parent companies," "insurers," "employees," and "agents." Attorney Bertrand also proposed that the release state: "This release does not release any claims against any agent of VGS."

When counsel for VGS asked for an explanation, Attorney Bertrand replied via email that Over & Under would not agree to a blanket release of "agents," but would consider excluding specific individuals from the releases being given to VGS. Those exclusions would include PriceWaterhouseCoopers, Joey Wilson of Wilson Engineering PLC, and Charlie Pughe of Charlie Pughe Associates, LLC. Counsel for VGS responded that the proposed limitations were inconsistent with the September 1-2, 2018 agreement and would not effectively settle the lawsuit since VGS agents and employees, if sued by Over & Under, could pursue indemnification and/or third-party claims against VGS. VGS subsequently filed the instant motion to enforce the parties' initial agreement to exchange general releases.

The Court held an evidentiary hearing on December 19, 2018. In the course of the hearing, two long-time Vermont attorneys testified about their understanding of standard general release language for corporate entities. Both attorneys testified that, in their experience, general releases in the State of Vermont always include the release of employees and agents.

4

## **Discussion**

The question before the Court is whether, as a result of the attorneys' conversations on September 1 and September 2, 2018, the parties had a binding and enforceable settlement agreement. In the course of those discussions, VGS made an offer of payment and proposed broad general releases and a stipulation of dismissal. Attorneys for Over & Under understood those terms, spoke with their client, and accepted the proposal. Over & Under now argues that the settlement, and in particular the material terms of the general releases, were never finalized.

It is well established that an oral agreement can be binding. *See Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). "This freedom to contract orally remains even if the parties contemplate a writing to evidence their agreement. In such a case, the mere intention to commit the agreement to writing will not prevent contract formation prior to execution." *Id.* With respect to the terms of an oral settlement agreement, "[t]he settlement remains binding even if a party has a change of heart between the time he agreed to the settlement and the time those terms are reduced to writing." *Powell v. Omnicom*, 497 F.3d 124, 129 (2d Cir. 2007).

Deciding whether the parties intended to be bound in the absence of a writing requires the Court to consider

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing;

5

>  (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Id.* (citing *Winston*, 777 F.2d at 80). No single factor is decisive. *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 323 (2d Cir. 1997).

Applying those four factors here, the Court finds that the parties had an enforceable settlement agreement as of September 2, 2018. First, there was no express reservation of the right not to be bound. Counsel for Over & Under informed counsel for VGS that they had spoken with Mr. Panna, and that he had agreed to accept the terms of the settlement. They did not say, as they expressed only in subsequent weeks, that there were material terms remaining to be negotiated. In particular, counsel for Over & Under did not inform VGS that they intended to carve out VGS employees, agents, and others from the general release. Instead, counsel for Over & Under agreed to an exchange of broad releases which, according to the testimony of highly-experienced Vermont attorneys, always include a corporation's agents.

The second factor, partial performance, "appears to have had the least sway with courts." *United States v. U.S. Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars ($660,200.00), More or Less*, 423 F. Supp. 2d 14, 28 (E.D.N.Y. 2006). Nonetheless, there was partial performance insofar as

counsel for VGS sent draft settlement documents after receiving confirmation of the settlement on September 2, 2018. *See id.* at 28-29.

The third factor focuses on whether all terms were agreed upon. Here, the material terms consisted of the monetary payment amount, the stipulation of dismissal, and the exchange of broad general releases. Over & Under argues that not all terms had been agreed upon because the general release language had not been finalized. To accept Over & Under's position, the Court would need to conclude that despite the parties' agreement to exchange general releases, with the clear understanding that those releases would be broad, the inclusion (or exclusion) of VGS's agents and employees in those releases remained in question after September 2, 2018. Again, VGS has offered convincing testimony that a general release in the State of Vermont always includes agents and employees.

Because a corporation is merely a legal entity, any action it takes must be through its agents. *See, e.g., In re Parmalat Sec. Litig.*, 421 F. Supp. 2d 703, 715 (S.D.N.Y. 2006) ("all corporations act only through their agents"); *Brandstein v. White Lamps*, 20 F. Supp. 369, 370 (S.D.N.Y. 1937) ("a corporation is a legal entity . . . existing only in the contemplation of the law; it can do no act, except through its agents"). Consequently, a refusal to release agents and employees leaves the corporation

7

exposed to future third-party claims from all persons who acted on its behalf. Such exposure is very broad, as liability may be imposed on a corporation even if its agents acted contrary to orders and without authority. *Vogt v. Abish*, 663 F. Supp. 321, 327 (S.D.N.Y. 1987); *see also In re ICP Strategic Credit Income Fund Ltd.*, 568 B.R. 596, 610 (S.D.N.Y. 2017) ("A corporation is responsible for the acts of its agents, even where those acts were unauthorized."), *aff'd sub nom. In re ICP Strategic Income Fund, Ltd.*, 730 F. App'x 78 (2d Cir. 2018). It is also "settled law that a corporation may be held criminally responsible for [criminal] violations committed by its employees or agents acting within the scope of their authority." *United States v. Twentieth Century Fox Film Corp.*, 882 F.2d 656, 660 (2d Cir. 1989). These well-established tenets of agency law explain why a release of a corporation is traditionally accompanied by a release of its agents and employees.

The final factor examines whether the agreement is of the type that is usually put in writing. Settlement agreements are typically finalized in writing. The question in this case is whether the parties' conversations on September 1 and September 2, 2018, prior to any written agreement, were binding. The Second Circuit has "found that the complexity of the underlying agreement is an indication of whether the parties reasonably could have expected to bind themselves orally." *Ciaramella v.*

*Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 326 (2d Cir. 1997). Here, the essential terms of the parties' agreement were not complex. The agreement reached as of September 2, 2018, was that VGS would make a payment of money to Over & Under in exchange for the dismissal of all claims and the exchange of mutual releases. Those releases would be broad and general, in keeping with Vermont practice. While minor drafting items may have remained for discussion, the material terms were set.

Over & Under cites *Okemo Mountain, Inc. v. U.S. Sporting Clays Ass'n*, 376 F.3d 102, 103 (2d Cir. 2004) for the proposition that an ambiguous release must be interpreted by a fact-finder after a hearing. At issue in that case was whether, under Vermont law, a certain release could be construed to bar a future claim against an agent in his individual capacity. *Id.* at 104. The issue here, in stark contrast, is whether the parties had an agreement to execute broad general releases. As the construction of those general releases is not before the court, *Okemo* does not control this case.

Over & Under also urges the Court to hold a hearing to determine the intent of the parties. As noted, the Court has now heard sworn testimony and representations from counsel about the communications at issue. As a result of that hearing, as well as a review of the briefs and attached affidavits, the Court now finds that counsel for VGS and counsel for Over & Under reached a

9

binding settlement agreement on September 2, 2018.  Counsel for VGS made clear that the agreement would included broad general releases that are commonplace in Vermont legal practice. Witnesses for VGS confirmed that such releases include, as standard language, the employees and agents of a released corporate entity.  Counsel for Over & Under understood that the releases would be broad.  Their subsequent efforts to narrow the scope of the releases to exclude corporate agents were in breach of their initial agreement.  VGS's motion to enforce the settlement agreement is therefore **granted**, and Over & Under shall execute a general releases that includes the release of VGS's employees and agents.  Such release shall be executed on or before January 11, 2019.

## Conclusion

For the reasons set forth above, VGS's motion to enforce the parties' settlement agreement (ECF No. 172) is **granted**.  Because the hearing on the motion to enforce was held in open court, the pending motions to file briefs, affidavits, and other exhibits under seal (ECF Nos. 173, 175, 178) are **denied**.  Finally, the parties shall bear their own fees and costs with respect all efforts to enforce the settlement agreement.

DATED at Burlington, in the District of Vermont, this 2nd day of January, 2019.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge